**Opinion filed June 20, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00336-CR

_____

## JUAN MANUEL VALENZUELA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-36,672**

### M E M O R A N D U M   O P I N I O N

The jury found Juan Manuel Valenzuela guilty of murder and assessed his punishment at confinement for forty years. The trial court sentenced Valenzuela in accordance with the jury verdict. We affirm.

On appeal, Valenzuela first argues that the trial court erred when it refused to charge the jury on the lesser included offense of manslaughter. Next, Valenzuela claims that the evidence is insufficient to support his conviction for murder.

For Eduardo Castillo and Oscar Carrasco, August 20, 2009, according to the evidence, began for them when they woke up around 8:00 a.m. Castillo and Carrasco lived together in a small trailer. They started drinking beer at 9:30 or 10:00 a.m., and each had about two beers that morning. Later, Jose Garcia showed up, as did Valenzuela. At some point in time, Valenzuela and Carrasco left to go to a liquor store to purchase some tequila.

After Valenzuela and Carrasco returned, Valenzuela began to "play" with Carrasco; he tried to get Carrasco to fight. Garcia tried to make Valenzuela stop, but when he did, Valenzuela went after Garcia. Valenzuela kicked him and threatened to get a gun from his car. When Carrasco told Garcia to leave, he did and began walking to his grandmother's house.

Castillo testified that, when Carrasco defended Garcia, it made Valenzuela angry at Carrasco, and after Garcia left, Valenzuela grabbed Carrasco from behind, twisted his arm, threw him to the ground, and began to kick him. Valenzuela kicked Carrasco many times in the chest, ribs, and head. Valenzuela wore heavy boots at the time. Castillo was confined to a wheelchair and could not help Carrasco, but he yelled at Valenzuela in an effort to get him to stop.

After Valenzuela had stopped kicking Carrasco, Castillo managed to stop two passersby, and they took Carrasco to Garcia's grandmother's house. Sheriff's deputies responded there after Garcia called law enforcement. When the deputies arrived, Carrasco told them he was swollen because a bee had stung him; he refused medical treatment.

Later in the day, Carrasco's ex-wife and daughter went to Garcia's grandmother's house to get him, and his son came to get him from them later. At that time, Carrasco looked as though he was about to faint, and over Carrasco's objection, his daughter called for an ambulance. Carrasco was taken first to Odessa Regional Medical Center and then to the intensive care unit at Medical

2

Center Hospital; he had significant bleeding from a subdural hematoma. Carrasco suffered a subdural hematoma on the right side of his brain, and it compressed the brain stem. Carrasco was removed from life support, and he died at 6:50 p.m. on August 22, 2009, from injuries resulting from blunt force trauma.

Because Valenzuela's second issue on appeal involves his challenge to the sufficiency of the evidence, we will take it up first. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.) (citing *Jackson*, 443 U.S. at 314, 318 n. 11). If we find that the evidence is insufficient under this standard, we must reverse the judgment and enter an acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 40–41 (1982).

In the first paragraph of the indictment, the grand jury charged that Valenzuela intentionally and knowingly caused Carrasco's death by kicking and striking and hitting him. In the second paragraph of the indictment, the grand jury charged that Valenzuela "intentionally, with the intent to cause serious bodily injury to Oscar Carrasco, commit[ted] an act clearly dangerous to human life,

3

namely, by kicking and striking and hitting the said Oscar Carrasco in the head, which caused the death of Oscar Carrasco." The jury was appropriately instructed at trial and found Valenzuela "guilty of the offense of Murder" without reference to either paragraph of the indictment.

Valenzuela argues that "the State was charged with proving beyond a reasonable doubt that [Valenzuela] acted with the conscious objective or desire to cause [Carrasco's] death." He maintains that the State did not meet that burden because the State did not prove that Valenzuela "acted with the conscious objective or desire to cause [Valenzuela's] death . . . or that he acted with the awareness that his conduct was reasonably certain to cause [Valenzuela's] death."

In *Lugo-Lugo*, the court noted that murder under Section 19.02(a)(2) of the Texas Penal Code is a result "type of crime."[1] *Lugo-Lugo v. State*, 650 S.W.2d 72, 81 (Tex. Crim. App. 1983). The court in *Cavazos*, has noted that the only mens rea specified in Section 19.02(b)(2) of the Texas Penal Code "is the intent to cause serious bodily injury and the statute does not add a culpable mental state to the conduct that caused the death." Nevertheless, "murder under Section 19.02(b)(2) is a 'result' crime." *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012) (citing *Lugo-Lugo*, 650 S.W.2d at 82).

The court in *Lugo-Lugo* said that an individual commits murder under Section 19.02(b)(2) when he (1) intends to cause serious bodily injury, (2) commits an act clearly dangerous to human life, and (3) causes the death of an individual. *Lugo-Lugo*, 650 S.W.2d at 81. The court also wrote: "[A] prosecution under [Section 19.02(b)(2)] must first show that the individual, acting with the conscious objective or desire to create a substantial risk of death, serious permanent

---

[1]Section 19.02(a)(2) of the Texas Penal Code is identical to the current section 19.02(b)(2) under which this case was charged. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West 2011).

disfigurement, or protracted loss or impairment of any bodily member or organ, caused the death of an individual." *Id.*

In order to prove the second element, it must be shown that the act intended to cause serious bodily injury was objectively clearly dangerous to human life. *Id.* Proof of the existence of a culpable mental state most often depends upon circumstantial evidence. *Lee v. State*, 21 S.W.3d 532, 539 (Tex. App.—Tyler 2000, pet. ref'd); *Morales v. State*, 828 S.W.2d 261, 263 (Tex. App.—Amarillo 1992), *aff'd*, 853 S.W.2d 583 (Tex. Crim. App. 1993). Generally, the culpable mental state must be inferred from the acts of the accused or from the surrounding circumstances, including not only acts, but also words and conduct. *Montgomery v. State*, 198 S.W.3d 67, 87 (Tex. App.—Fort Worth 2006, pet. ref'd); *Lee*, 21 S.W.3d at 539; *Morales*, 828 S.W.2d at 263; *see Ledesma v. State*, 677 S.W.2d 529, 531 (Tex. Crim. App. 1984).

Valenzuela was angry when he grabbed Carrasco from behind; threw him to the ground; and began to repeatedly kick him multiple times in the ribs, chest, and head. The beating administered to Carrasco by Valenzuela resulted in a subdural hematoma caused by blunt force trauma—consistent with being struck in the head by someone wearing steel-toed boots. Carrasco died from the injury.

We have examined all the evidence in the light most favorable to the verdict, and we hold that, based on the evidence and any reasonable inferences from it, any rational trier of fact could have found the elements set out in *Lugo-Lugo* in that Valenzuela intended to cause serious bodily injury when he committed an act objectively clearly dangerous to human life that caused Carrasco's death. *See Lugo-Lugo*, 650 S.W.2d at 81. Valenzuela's second issue on appeal is overruled.

Valenzuela complains in his first issue that the trial court erred when it refused to instruct the jury on the lesser included offense of manslaughter. When we review a trial court's decision to include or exclude a lesser included offense,

5

we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005). We then employ a two-part test. First, the lesser included offense must be included with the proof necessary to establish the offense charged. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). Second, some evidence must exist in the record that, if the defendant is guilty, he is guilty only of the lesser offense. *Id.* If evidence from any source raises the issue of a lesser included offense, a requested charge on that offense must be included. *Luna v. State*, 264 S.W.3d 821, 830 (Tex. App.—Eastland 2008, no pet.).

Manslaughter is a lesser included offense of murder. *Cavazos*, 382 S.W.3d at 386; *Moore v. State*, 969 S.W.2d 4, 9 (Tex. Crim. App. 1998). Therefore, we will proceed to discuss whether there is some evidence in the record that shows that, if Valenzuela is guilty at all, he is guilty only of manslaughter.

A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04 (West 2011). The Penal Code further provides:

> A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (West 2011).

Before Valenzuela would be entitled to the lesser included offense issue, the evidence must show that the lesser included offense is a "valid, rational alternative" to murder. *Cavazos*, 382 S.W.3d at 385. The evidence must be germane to the lesser included offense and rise to a level that a rational jury could

6

find that, if Valenzuela is guilty, he is guilty only of the lesser included offense of manslaughter. *Id.* There was no evidence in this case directly germane to recklessness. Throwing someone to the ground, repeatedly kicking them in the ribs, in the chest, and in the head until they cannot get up on their own, hitting them one last time and laughing about it, and doing nothing to assist the victim does not rationally support an inference that Valenzuela acted recklessly at the time he was delivering the blows that ultimately led to Carrasco's death. The evidence in this case does not show that Valenzuela merely acted recklessly. The evidence does not rise to the level that would allow a rational jury to find that, if Valenzuela is guilty, he is guilty only of manslaughter. *Cavazos*, 382 S.W.3d at 385. Because there was no evidence that raised the issue of the lesser included offense of manslaughter, the trial court did not err when it refused to submit that lesser included offense. Valenzuela's first issue on appeal is overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT

CHIEF JUSTICE

June 20, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.

7